UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------X
GODINGER SILVER ART LTD.,                 :
                                          :
                    Plaintiff,            :
                                          :
        -against-                         :
                                          :    **REPORT AND RECOMMENDATION**
                                          :
SHENZEN TANGSON                           :    21 Civ. 2674 (LDH) (VMS)
HOUSEWARE CO. LTD. D/B/A                  :
AMAZON STOREFRONT-HOME                    :
SIGNATURE,                                :
                                          :
                    Defendant.            :
------------------------------------------X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Godinger Silver Art Ltd. ("Plaintiff") brought this action against Defendant Lighten Up Life Inc. ("Defendant"), alleging that Defendant (1) infringed on Plaintiff's patent in violation of 35 U.S.C. § 271 ("Count I"); (2) committed federal unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A) ("Count II"); (3) committed unfair competition under New York common law ("Count III"); and (4) violated N.Y. Gen. Bus. Law §§ 3494 and 3505 ("Count IV"). See ECF No. 6, passim. Plaintiff filed a motion for default judgment ("Default Judgment Motion") against Defendant, which has not appeared. See ECF No. 13. The District Court adopted this Court's report and recommendation ("R&R on Default Judgment Motion") recommending that the District Court grant Plaintiff's Default Judgment Motion with respect to Count I; deny without prejudice the motion with respect to Counts II, III and IV with leave to replead; and grant a permanent injunction enjoining Defendant from infringing U.S. Patent No. D846,947 (hereafter, "the '947 Patent") in the future. See ECF Nos. 23; 23-1. In addressing Plaintiff's entitlement to damages and attorney's fees, this Court's R&R on Default Judgment

1

Motion noted that Plaintiff did not "select the theory on which it seeks damages—lost profits or lost royalties." ECF No. 23 at 20-21. The Court also noted that, as to the request for attorney's fees, Plaintiff failed to offer "any evidence as to how many hours Plaintiffs' [sic] attorney worked or the hourly rate." Id. at 22. This Court recommended that Plaintiff be permitted to file an amended complaint to cure the identified defects or otherwise "be allowed to make a motion for damages, pre-judgment interest, and attorneys' fees and costs as to Count I, supported by the proper legal argument and documentation." Id. at 23. The Court's mailing to Defendant of its R&R on Default Judgment Motion was returned as undeliverable. See ECF No. 25.

Following the District Court's adoption of this Court's R&R on Default Judgment Motion, Plaintiff moved for an extension of time to file the present motion for damages. See ECF Nos. 24, 26. The Court granted Plaintiff's motion and mailed a copy of the Order and the docket sheet to Defendant. See Dkt. Entry. The Court's mailing to Defendant was returned as undeliverable. See ECF No. 27. Plaintiff timely filed its motion for damages and served it by U.S. mail on Defendant. ECF No. 26; see Certificate of Service, ECF No. 26-1, 6. The District Judge referred Plaintiff's motion for damages to this Court for a report and recommendation. The parties are referred to this Court's R&R on Default Judgment Motion for background details and procedural history. See ECF No. 23.

In its memorandum in support of its motion for damages, Plaintiff requests lost-profit damages in the amount of $371,562.00, the high end of Plaintiff's estimated range of Defendant's profits derived from the sale of the infringing goods. ECF No. 26-1 at 4. Pursuant to 35 U.S.C. § 284, Plaintiff also claims that it is entitled to prejudgment interest in an amount left at the Court's discretion. Id. at 5. This Court respectfully recommends for the reasons stated below that the District Court deny the motion for damages but that it permit Plaintiff to submit a

2

new motion for damages either properly supporting a request for damages based on lost profits or based on a theory of royalty damages in lieu of lost-profit damages. As any interest would be calculated based on an award of damages, if any, the request for an award of interest is presently premature and should be denied without prejudice.

## I. Background And Default Judgment Motion

The following facts are drawn from the docket and Plaintiff's amended complaint. See ECF No. 6. Plaintiff, a New York corporation that specializes in crafted silver and crystal goods, is the assignee of the '947 Patent, which patented a drinking glass with a built-in cigar holder. Id. ¶¶ 2, 11-12. Among other products, Defendant manufactures, markets and sells the "Lighten Life Cigar Glass," consisting of a drinking glass with built-in cigar holder identical to the '947 Patent. Id. ¶ 13. Since at least July 14, 2020, Defendant has sold the Lighten Life Cigar Glass, which comes in a rounded form and a semi-circular form and is available for purchase on Amazon.com. Id. ¶¶ 13-15. Plaintiff provided side-by-side comparisons of the '947 Patent and both forms of the Lighten Life Cigar Glass. Id. ¶ 25. Plaintiff claims that Defendant "ha[s] been aware of the '947 Patent" and "ha[s] continued to infringe . . . with knowledge, understanding and appreciation of the '947 Patent, and the rights it bestows upon Plaintiff." Id. ¶¶ 16-17. Defendant's continued sale of the Lighten Life Cigar Glass "evidence[s] a willful and wanton disregard of Plaintiff's right vis-à-vis the '947 Patent and a desire to profit, without regard or respect for U.S. patent laws." Id. ¶ 19. Plaintiff submitted with the amended complaint a copy of the '947 Patent, see ECF No. 6-1, and screenshots of Defendant's Amazon store pages for the Lighten Life Cigar Glass. See ECF No. 6-2.

In support of its motion for damages, Plaintiff submits the Declaration of Chaim Lefkowitz ("Lefkowitz Declaration" or the "Declaration"), Plaintiff's Chief Operating Officer

3

("Lefkowitz" or "Declarant"). See Lefkowitz Decl., ECF No. 26-2. The Declaration states that "Defendant had two listings of products found to be infringing the patent at issue, identified by Amazon ASIN numbers B08GR2R7WK ("'7WK'") and B08CXXVQTY ("'QTY'") for whiskey glasses with cigar rests." Id. ¶ 5. Based on Declarant's "personal knowledge of the Amazon seller industry from [Declarant's] work for Plaintiff, including for whiskey glasses and whiskey glasses with cigar rests," id. ¶ 6, the Declaration offers estimates of Defendant's profits per sale of the alleged infringing products and Defendant's total gross profits. Id. ¶¶ 14-16. To present "a fair approximation of Defendant's sales," id. ¶ 9, the Declaration cites to online analyses that show that "Amazon sellers generally receive 1 or 2 ratings per 100 products sold." Id. ¶ 7. The Declaration estimates based on the number of customer ratings each product received on Amazon, that Defendant's sales are between 13,200 and 26,400 units for the '7WK product and between 12,700 and 25,400 for the 'QTY product. Id. ¶¶ 9, 11. The Declaration also estimates the cost of producing Defendant's products, "including cost of manufacture, as well as duty and shipping," id. ¶ 12, but does not come to a definite estimate of the per unit cost.[1] The Declaration estimates that "Defendant sold the 'QTY whiskey glasses for an average price of $17.99 per unit and '7WK whiskey glasses for an average price of $15.99 per unit." Id. ¶ 13. Applying these average prices, the Declaration estimates that Defendant made between $83,688.00 and $167,376.00 in gross profit for the '7WK product and between $102,108.00 and $204,216.00 in gross profit for the 'QTY product." Id. ¶¶ 15-16.

---

[1] Plaintiff attaches "price tracking data" but its relevance is unclear because although Plaintiff cites to Amazon data, Exhibits E and F refer to eBay data.

## II.     Analysis

### a. Damages

Plaintiff requests $371,562.00 in damages, which corresponds to the high end of the amount of Defendant's estimated profits under 35 U.S.C. § 289.  ECF No. 26-1 at 4.  For the reasons offered below, the Court respectfully recommends that the District Court deny the present motion but that it permit Plaintiff to submit a new motion for damages either properly supporting the request for damages based on lost profits or based on royalty calculations under 35 U.S.C. § 284.

### i. Legal Standard

In a patent infringement case, a court may award damages under 35 U.S.C. § 284 ("Section 284") or 35 U.S.C. § 289 ("Section 289").  Section 284 provides that "the court shall award [the patent owner] damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."  35 U.S.C. § 284.  "Under the statute, 'damages adequate to compensate' means 'full compensation for . . . any damages [the patent owner] suffered as a result of the infringement.'"  Mentor Graphics Corp. v. EVE-USA, Inc., 851 F.3d 1275, 1283 (Fed. Cir. 2017) (alteration in original) (quoting Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 654-55 (1983)).  Section 289 provides that "[w]hoever during the term of a patent for a design, without license of the owner . . . sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties."  35 U.S.C. § 289.  When a patentee demonstrates a reasonable probability that "it would have made additional sales but for a defendant's infringement, the patentee is entitled to be made whole for the profits

5

it proves it lost" under Section 289. Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc., 32 F.4th 1161, 1180 (Fed. Cir. 2022) (quoting Mentor Graphics Corp., 851 F.3d at 1284). "There is no particular required method to prove but[-]for causation. One 'useful, but non-exclusive' method to establish the patentee's entitlement to lost profits is the Panduit test first articulated by the Sixth Circuit." Mentor Graphics Corp., 851 F.3d at 1284 (quoting Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc)). Second Circuit courts have applied the Sixth Circuit's Panduit test to determine whether a patentee is entitled to lost-profit damages under Section 289. See, e.g., Town & Ctry. Linen Corp. v. Ingenious Designs LLC, No. 18 Civ. 5075 (LJL), 2022 WL 2757643, at *26 (S.D.N.Y. July 14, 2022) (applying "the widely used" four-factor Panduit test found in Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978)); Group One Ltd. v. GTE GmbH, 625 F. Supp. 3d 28, 73-74 (E.D.N.Y. 2022); Am. Tech. Ceramics Corp. v. Presidio Components, Inc., No. 14 Civ. 6544 (KAM) (GRB), 2018 WL 1525686, at *9 (E.D.N.Y. Mar. 27, 2018).

Under the Panduit test, a patentee seeking lost-profit damages must prove "(1) demand for the patented product, (2) absence of acceptable non-infringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made." Panduit, 575 F.2d at 1156. "The Panduit factors speak to the critical question whether the plaintiff in fact would have made the sales made by the infringer, absent the infringement." Town & Country Linen Corp., 2022 WL 2757643, at *26. "[T]he patentee must show 'a reasonable probability that 'but for' the infringing activity, the patentee would have made the infringer's sales.'" Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1377 (Fed. Cir. 2003) (citing Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc., 246 F.3d 1336, 1353 (Fed. Cir. 2001)). "To show 'but for' causation, the patentee must reconstruct the

6

market to determine what profits the patentee would have made had the market developed absent the infringing product. Such market reconstruction must be supported by 'sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture.'" Id. (citing Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1350 (Fed. Cir. 1999)). Although the "'but for' analysis requires the 'hypothetical enterprise' of reconstructing the market as it would have been absent the infringing product to determine what profits the patent owner lost, courts insist that plaintiffs provide 'sound economic proof' as to how they were affected by the infringement so as to 'prevent the hypothetical from lapsing into pure speculation.'" Merchant Media, LLC v. H.S.M. Intern., No. 05 Civ 2817 (JES), 2006 WL 3479022, at *7 (S.D.N.Y. Nov. 30, 2006) (citing Grain Processing Corp., 185 F.3d at 350).

Courts in this Circuit have required that a plaintiff offer sales figures of the infringing product in order to satisfy the first Panduit factor. See Bic Corp. v. First Prominence Co., Ltd., No. 00 Civ. 7155 (SHS) (RLE), 2001 WL 1597983, at *2 (S.D.N.Y. Dec. 10, 2001); see Stryker Corp. v. Intermedics Orthopedics, Inc., 891 F. Supp. 751, 820 (E.D.N.Y. 1995) (finding that plaintiff satisfied the first Panduit factor with "overwhelming evidence of demand for the patented product, reflected, among other ways, in sales of the patent's commercial embodiment, sales of the . . . infringing product, and comparisons of the sales of these two products to their respective predecessors"). "The first factor — demand for the patented product — considers demand for the product as a whole." Group One Ltd., 625 F. Supp. 3d at 74 (citing Mentor Graphics Corp., 851 F.3d at 1285) (finding that plaintiff offered sufficient evidence that defendants are its direct and only competitor and that there is market demand for plaintiff's product among a specific market); see SmithKline Diagnostics Inc. v. Helena Labs. Corp., 926 F. 2d 1161, 1165 n.3 (Fed. Cir. 1991) (finding that the first Panduit factor was satisfied where

7

defendant could not dispute the obvious demand for plaintiff's product). "All a patentee must do is 'sell[ ] some item, the profits of which have been lost due to infringing sales.'" Georgetown Rail Equipment Co. v. Holland LP, 867 F.3d 1229, 1241-42 (Fed. Cir. 2017) (Versata Software, Inc. v. SAP Am., Inc., 717 F.3d 1255, 1265 (Fed. Cir. 2013)). "A patent owner may satisfy the first prong by demonstrating a significant amount of sales of the infringing product as evidence of demand for the product." Bic Corp., 2001 WL 1597983, at *2 (finding substantial sales of the infringing product by the defendants based on exact sales figures of the infringing product). "This analysis assumes that the patent owner and the infringer sell substantially the same product." Nat'l Research Labs. v. Eppert Oil Co., 104 F. Supp. 2d 851, 857-58 (S.D. Oh. 2000) (citing BIC Leisure Prods. v. Windsurfing Int'l, Inc., 1 F.3d 1214, 1218-19 (Fed. Cir. 1993)). For example, in Gyromat Corp., the court found that the "substantial number of sales by Champion of infringing products containing the patented features itself is compelling evidence of the demand for the product. Champion's sales necessarily meant that there were buyers who wanted the product and were willing to pay Champion's price, which was substantially the same as that of Gyromat." Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 552 (Fed. Cir. 1984).

"The second factor — the absence of non-infringing alternatives — considers demand for particular limitations or features of the claimed invention." Group One Ltd., 625 F. Supp. 3d at 74 (citing Mentor Graphics Corp., 851 F.3d at 1285). This factor "often proves the most difficult obstacle for patent holders." Mentor Graphics Corp., 851 F.3d at 1286. "To prove the absence of acceptable, non-infringing alternatives, the patentee may prove either that the potential alternative was not acceptable to potential customers or was not available at the time." Group One Ltd., 625 F. Supp. 3d at 74 (citing Presidio Components, 875 F.3d at 1380). "For example,

if the customer would have bought the infringing product without the patented feature or with a different, non-infringing alternative to the patented feature, then the patentee cannot establish entitlement to lost profits for that particular sale. And this determination is made on a customer-by-customer basis. For this reason, it is quite common to see damage awards where . . . the patentee proves entitlement to lost profits for some of its sales, but not others." Mentor Graphics Corp., 851 F.3d at 1286.

The third Panduit factor examines a patentee's manufacturing and marketing capability to exploit the demand. "[L]ost profit damages are not available as a matter of law where the plaintiff did not have the ability and intent both to manufacture and market a product embodying the patented invention in the same market in which the defendant sold the allegedly infringing product." Town & Country Linen Corp., 2022 WL 2757643, at *27. A plaintiff must offer evidence "confirming that it had the manufacturing capacity to make the additional [sales] it would have made if the [infringing products] were not in the market." Bic Corp., 2001 WL 1597983, at *2. In examining a patentee's manufacturing capabilities, Second Circuit courts have looked at a patentee's sales figures as proxies for the ability to meet demand. See, e.g., Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co., Inc., 647 F. Supp. 3d. 145, 239 (S.D.N.Y. 2022). To show marketing capabilities, courts may examine the length of the patentee's presence in the market, its recognition and distribution network. See id. at 240. "The only exception is where the patentee has the ability to manufacture and market a product, but for some legitimate reason does not. Even in these situations, though, 'the burden on a patentee who has not begun to manufacture the patented product is commensurately heavy.'" Town & Country Linen Corp., 2022 WL 2757643, at *27 (citing Wechsler v. Macke Intern. Trade, Inc., 486 F.3d 1286, 1293 (Fed. Cir. 2007)).

9

The fourth Panduit factor looks at the amount of profit the patent holder would have made "but for" the infringing product's presence on the market. To meet this factor, patent holders have offered documentation showing "a drop in their own sales volume and revenues during the pertinent period as compared to prior years." This can be difficult to show. For example, the court in Panduit found that the plaintiff was not entitled to lost-profit damages because it failed to establish the fourth factor. See Panduit Corp., 575 F.2d at 1156 (finding that "Panduit's Achilles heel on element (4) is a lack of evidence on its fixed costs").

For sales as to which the patentee cannot prove the elements necessary to establish entitlement to lost profits, the statute guarantees the patentee a reasonable royalty for those sales based on the alternative theory of royalties owed. See Mentor Graphics Corp., 851 F.3d at 1286. "The infringed party bears the burden of proof to persuade the court with legally sufficient evidence regarding an appropriate reasonable royalty." ResQNet.com, Inc. v. Lansa, Inc., 828 F. Supp. 2d 688, 692 (S.D.N.Y. 2011). "A reasonable royalty can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer." Wordtech Sys., Inc. v. Integrated Networks Sols., Inc., 609 F.3d 1308, 1319 (Fed. Cir. 2010). "Determining a reasonable royalty does not require 'mathematical exactness,' but a 'reasonable approximation' under the circumstances of a given case." Probatter Sports, LLC v. Sports Tutor, Inc., 586 F. Supp. 3d 80, 87-88 (D. Conn. 2022) (citing Gaylord v. United States, 777 F.3d 1363, 1368 (Fed. Cir. 2015)). "The more common approach of determining damages attempts to ascertain the royalty rate to which the parties would have agreed had they negotiated an agreement prior to infringement . . . . In calculating a reasonable royalty under this approach, courts rely on the comprehensive, if overlapping, list of fifteen factors detailed in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp.

1116, 1120 (S.D.N.Y. 1970), often termed the 'Georgia-Pacific factors.'" ResQNet.com, 828 F. Supp. 2d at 692.[2]

### ii. Discussion

Plaintiff seeks to recover lost-profit damages under Section 289. ECF No. 26-1 at 2. This Court respectfully recommends that Plaintiff's motion be denied because Plaintiff does not provide sufficient evidence to establish any of the four Panduit factors.

This Court finds that Plaintiff's motion fails to meet the Panduit test's first factor, which looks at demand for the patented product. Plaintiff claims that because "Defendant has not

---

[2] The district court in Georgia-Pacific identified the following fifteen factors to help determine the amount of a reasonable royalty for a patent: (i) the "royalties received by the patentee for the licensing of the patent in suit"; (ii) the "rates paid by the licensee for the use of other patents comparable to the patent in suit"; (iii) the "nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold"; (iv) the "licensor's established policy and marketing program to maintain his patent monopoly"; (v) the "commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter"; (vi) the "effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales"; (vii) the "duration of the patent and the term of the license"; (viii) the "established profitability of the product made under the patent; its commercial success; and its current popularity"; (ix) the "utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results"; (x) the "nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention"; (xi) the "extent to which the infringer has made use of the invention; and any evidence probative of the value of that use"; (xii) the "portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions"; (xiii) the "portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer"; (xiv) the "opinion testimony of qualified experts"; and (xv) the "amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement." Georgia-Pacific, 318 F. Supp. at 1120.

appeared and therefore Plaintiff has not had the opportunity to conduct discovery, Plaintiff [used] just and reasonable inferences based on its industry knowledge to determine Defendant's profits." ECF No. 26-1 at 3.  Plaintiff, however, has failed to offer evidence of its own sales for the patented product or any information demonstrating that Defendant is Plaintiff's direct and only competitor.  See Stryker Corp., 891 F. Supp. at 821; Group One Ltd., 625 F. Supp. 3d at 74 (citing Mentor Graphics Corp., 851 F.3d at 1285).  As discussed above, "[a] patent owner may satisfy the first prong by demonstrating a significant amount of sales of the infringing product as evidence of demand for the product," Bic Corp., 2001 WL 1597983, at *2.  In the alternative, Second Circuit courts have relied on the plaintiff's sales figures when the patented product is sold through third parties, such as Amazon, to show demand.  See Focus Prod. Grp. Int'l, 647 F. Supp. 3d. at 183-84, 238 (where plaintiff provided retail, media and hospitality sales figures for its patented product, with percentages of sales ranging up to 10% at Amazon).  Plaintiff offers that it "has been in the business of selling consumer goods on Amazon for over 10 years." Lefkowitz Decl. ¶ 6.  Yet, it infers Defendant's sales figures based on only Chaim Lefkowitz's "personal knowledge of the Amazon seller industry from [his] work for Plaintiff." Id.  It also fails to provide the Court with evidence or estimates of Plaintiff's own sales of similar products on Amazon.[3]

The Declaration's calculations of Defendant's estimated sold units and gross profit are based on an estimation that "Amazon sellers generally receive 1 or 2 ratings per 100 products sold." Id. ¶ 7.  According to the Declaration, "[a]s of April 3, 2023, Defendant's '7WK listing had 264 ratings. Therefore, Defendant's sales of the '7WK product are estimated to be between 13,200 and 26,400 units sold.  As of April 3, 2023, the 'QTY listing had 254 ratings.

---

[3] To the extent this information is not in Plaintiff's possession, it is unclear to the Court why Plaintiff did not request these sales figures from Amazon during this litigation.

12

Defendant's sales of the 'QTY product is thus estimated to be between 12,700 and 25,400 units sold." ECF No. 26-1 at 3; see id. ¶¶ 5, 8-11. Applying "the average profit amount for Defendant's sales of the '7WK product to the estimated calculation of . . . units sold, results in a total estimated calculation of between $83,688.00 and $167,376.00 in gross profit." ECF No. 26-1 at 4. Applying "the average profit amount for Defendant's sales of the 'QTY product to the estimated calculation of . . . units sold, results in a total estimated calculation of between $102,108.00 and $204,216.00 in gross profit." Id. The Declaration does not provide the basis for Declarant's knowledge that reviews can support an estimate of sales. It does not cite to practices or materials from Amazon, vendor industry sales materials or even academic papers or case studies to substantiate its position. It does not even use sales and reviews of Plaintiff's other products on Amazon as a basis of support for this calculation. The Court finds that Plaintiff's estimations of Defendant's sales figures do not sufficiently show market demand for Defendant's infringing product and fail to meet the Panduit test's first factor.

To satisfy the Panduit test's second factor, which looks to the absence of non-infringing alternatives, a plaintiff needs to show that plaintiff's "lost profits are in the form of the sales made by the infringer, i.e., that the patent holder and the infringer are direct competitors in the same market." Town & Country Linen Corp., 2022 WL 2757643, at *26 (emphasis in original). The inquiry is whether a non-infringing alternative would be acceptable compared to the patent owner's product. See Presidio Components, 875 F.3d at 1381. Although Plaintiff's motion and the Declaration offer an estimation of Defendants' sales figures and gross profit, neither addresses the question of "the absence of acceptable, non-infringing alternatives" to Plaintiff's products. Id. at 1380. Plaintiff has not offered any evidence suggesting that Defendant is Plaintiff's "direct and only competitor" and that no acceptable non-infringing alternatives to

13

Plaintiff's product exist on the market.  See Group One Ltd., 625 F. Supp. 3d at 75.  Unless Plaintiff can show that "but for" the presence of Defendant's infringing products on the market, purchasers would have bought Plaintiff's product, the Court cannot assume that market purchases would have been made from Plaintiff and not from another competitor.  See Rosco, Inc. v. Mirror Lite Co., 626 F. Supp. 2d 319, 331-32 (E.D.N.Y. 2009) (finding that the patentee was not entitled to lost profits because the patentee sold acceptable, available non-infringing alternatives that customers bought over the infringing products).

As to the third Panduit factor, Plaintiff's manufacturing and marketing abilities, Plaintiff only states that its products are allegedly available on the U.S. market, see Amended Complaint ¶ 23, ECF No. 6, and that "Plaintiff has been in the business of selling consumer goods on Amazon for over 10 years."  Lefkowitz Decl. ¶ 6.  Although these facts provide the Court with some insight as to Plaintiff's relevant capabilities, Plaintiff does not offer any evidence of its capacity to manufacture the products to meet its hypothetical customers' demands or its abilities to locate the same or similar customers that Defendant allegedly found.  See TEK Global, S.R.L. v. Sealant Systems Int'l Inc., 920 F.3d 777, 790-91 (Fed. Cir. 2019) (finding that plaintiff met the third Panduit factor based on plaintiff's damages expert's testimony, reports, financial documents and proof that plaintiff had been providing General Motors with one-hundred percent of its North American product before defendant's infringing sales); Focus Prod. Grp. Int'l, 647 F. Supp. 3d. at 239 (relying on plaintiffs' exact sales figures during the relevant period to determine whether plaintiffs would have met the manufacturing demands and customer orders that defendant handled with its infringing product).

As to the fourth Panduit factor, Plaintiff has not submitted sufficient evidence "confirming that it would have made an additional, quantifiable profit from additional sales."

14

Bic Corp., 2001 WL 1597983, at *2; see Group One Ltd., 625 F. Supp. 3d at 76 (finding that the court could not determine the profits the plaintiff would have made because plaintiff did not provide evidence of its fixed costs). Plaintiff's motion only offers an estimate of Defendant's gross revenues based on the number of online customer reviews for Defendant's products, Lefkowitz Decl. ¶¶ 14-16, but it does not provide cost estimates for Defendant's competing product sales that are supported by objective evidence. Plaintiff's motion does not include sufficient information to meet the fourth Panduit factor.

### III. Conclusion

In light of the foregoing, I respectfully recommend that the District Court (1) deny Plaintiff's motion for damages based on lost-profit damages without prejudice; (2) permit Plaintiff to submit a new motion for damages either properly supporting the request for damages based on lost profits or based on a theory of royalty damages in lieu of lost-profit damages, as well as for attorney's fees, within twenty-one (21) days of an order adopting this report and recommendation, if it is adopted; and (3) refer any damages motion to the undersigned if the Court grants leave for Plaintiff to file such motion. Should Plaintiff make the motion on damages, such motion must be served in accordance with the Local Rules governing default motions.

### IV. Objections

This report and recommendation will be filed electronically. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within

fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

The Court will mail copies of this report and recommendation to Lighten Up Life Inc., 228 Park Ave. Suite #79525, New York, NY 10003, and Lighten Up Life Inc., c/o Yunxiao Zhao, 1060 Broadway Suite 3000, Albany, NY 12204.

Dated: Brooklyn, New York
       February 23, 2024

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge